Mr. Isikoff, good morning, welcome. Please proceed. May it please the Court, Andrx requests vacation of a plenary injunction order that was entered below. And we offer in support of our position two wholly independent arguments. The first being procedurally based and some things have occurred since the briefs were filed that I think bear directly on how much extrajudicial Some things, you mean the Tevo appeal? The Tevo appeal, the fact that there was a settlement with Ranbaxy and that appeal was noticed and dismissed and a mandate's issued. Well, that settlement doesn't really affect our consideration of this matter. The settlement doesn't. I agree, Your Honor. It's really the Tevo appeal that gives you some more ammunition you didn't have when you filed your brief. We certainly have more ammunition. Counsel, what about the fundamental problem that it appears that your injunctive proceeding as a matter of assembly of the record and the evidence was separate from the others, and therefore you should be entitled to rely on whatever evidence and argument you produced in your separate proceeding. But you don't get the benefit of somebody else's proceeding that might have had different evidence or different theories. Your Honor, I don't believe that the concepts of unclean hands or collateral estoppel would so limit us in this case, and I would even go a step further. I'm not talking about collateral estoppel. I'm not talking about equity at all. I'm just talking about the fundamental idea that a party is limited by his record. And if these cases were related but not consolidated, and if the scheduling orders provided for separate evidentiary hearings, then why shouldn't you and every other defendant be limited by whatever evidence you elected to put into your record? Your Honor, the cases were consolidated for pretrial purposes, and we expressly adopted the arguments of Teva in our brief, and we adopted the arguments of Ranbaxy in the hearing. I'm not talking about arguments yet. I'm talking about evidence. The arguments just flesh out what the evidence means. But if the evidentiary records were be limited to whatever evidence you put into your record. Your Honor, respectfully, I don't know that that is a proper analysis here, and that is because at the hearing, we had three different parties tracking at different times. We weren't making overlapping arguments. But you say the hearing. I thought there were different hearings for different parties. Three separate hearings. You had your hearing. That's correct. Another party had his hearing. That's right. We raised certain arguments and we produced certain evidence. Let's be specific because it might be helpful. In the Teva matter, the prior art was sort of general knowledge of extended release of drugs and GI side effects, whereas in your case you cited the 667, 681, and 829. The Teva appeal agreed with the district court that it was obvious on the basis of that general knowledge of extended release. And what Chief Judge Michel is asking is, how do you get the benefit of that? And I suppose your answer is that you would argue that you were in the same proceeding. But beyond that, you would say that once the Federal Circuit has decided that there's a problem of obviousness with that patent, you get some benefit, collateral estoppel benefit of that because it doesn't have to be a final judgment. It just needs to be something that isn't likely to be reviewed. That's correct, Your Honor. So that's the answer. You are normally stuck with your record. We are. Here you may have wound around somewhere under Rule 42 to get the benefit of it, but what you get the real benefit of is the Teva appeal. We, for example, rely on cases like the Miller Brewing Company case which says you don't need a final judgment as that's Well, let's assume that that's a given then, and you agree with what Judge Ellis just asked. Where does that leave you in this case, however? Because even if that's the case with respect to the obviousness and validity issue, you still got a third patent. Correct. So let me ask you about that patent. First of all, do you lose if you lose one out of three? In other words, does that mean as a practical matter that the injunction stays in place so that we would almost not even have to reach those? When you say do we lose, meaning if we infringe any asserted claim in the 407, is that the question? The answer would be yes, of course, we would lose. That the PI stays in effect. I mean, let's assume hypothetically that we were to say that Abbott controls on the invalidity on the two patents, but that inequitable conduct is still out there and we would affirm the judge on the inequitable conduct, right? Yes. So the PI remains in effect. It would. And I'd like to comment on that before we leave the issue of collateral estoppel and the effect of these various decisions that have occurred. I understand Chief Judge's concern about this. However, in the Ranbaxy case, the court developed a record based on evidence presented where part of those proceedings was a separate hearing, separate day with separate evidence. But the court determined in that case that a substantial question of unenforceability had been raised as to the under Rule 42. If they raised inequitable conduct, why didn't you just join in that, appear at the hearing and join in your argument? Well, in response to that, Your Honor, one I think important point here is unlike in the other cases, we haven't even answered yet. We have a motion dismissed that's still pending. But that doesn't mean that when they bring a motion, he obviously consolidated them for some purposes under Rule 42. That's 407, Claims 8 and 16. When they, they, Ranbaxy, raised the inequitable conduct, why didn't you all say, we agree. We're here. But we're there. We did. At the hearing, we did. We didn't know until we got to the hearing and we saw their briefs just before. Our briefs were already filed. It was already over and done. We realized that they were raising that argument and we said, we agree. We adopt those arguments. We were able to do it in our brief in Teva because we knew about that sooner and they were tracking way ahead of our case. Well, that's what you seem to say in your brief. But tell me what I'm missing from the appendix because the only cite that I could, if I'm wrong, tell me. The, your citation as to how you agreed and incorporated was to JA 209 in the briefs, I believe. And the only thing I could see in that statement was one sentence that said, we also agree that because you say your one statement is, we agree that Rams ram taxi is correct in its assertion that in your view is sufficient to say that you incorporated all of the arguments and the evidence and everything with respect to inequitable conduct. In your particular case, your honor, we actually go further than that. And what we say is that even if we hadn't done that, even if we said nothing that in the context of these proceedings where we're looking at the exact same patents, where there's a full and fair opportunity to litigate where Abbott chose its defendants, it's chose its form and litigated this case in its backyard in Chicago, where there was a full and fair opportunity to litigate where there's no evidence, no final judgment. The case was never appealed. If Rams backseat had not settled out and it were before this court and this court made a final determination and issued a mandate with respect to inequitable conduct, perhaps that would be a different question. I don't disagree with you. And if we were here, for example, trying to rely upon these decisions on an appeal from a summary judgment on non-infringement or a final determination in the case, I would agree. But comparing apples to apples in this case, these are preliminary determinations that were made with respect to the validity or enforceability of patents. Nothing's changed as between all three cases. The important point here is that all of the report below was all conduct of Abbott. It's nothing unique about anything that Ram backseat did or anything that Teva did. It's none of their conduct. But you're asking us to enforce the lower court, the district court's conclusions with respect to inequitable conduct in another case that we have never reviewed or affirmed, correct? That is correct. And that makes this different from the other issue of obviously, correct? It does. There's, I see a difference clearly. And so the case that you cite to us, Miller-Brewing, to the extent it applies at all, applies more with respect to the Teva issue than it does to the Teva case. I can see that, Your Honor. I see the difference. There is a difference. So are there any cases to support? So where are the cases to support this proposition that it's to be treated as if it were a final judgment? Neither side has found, in my judgment, a case right on point on this unique issue. Because we have a unique set of circumstances. Same judge, same proceedings, same patents. And you've got different days of different hearings where determinations have been made as to the patents preliminarily, which we're seeking to apply preliminarily in the same context, in the same case. And so that's a fairly unique set of facts. I will concede that the other side has not found any cases to stand for the other proposition. And we haven't found the Neal and Haystack case to stand for the proposition that we assert. But we feel very strongly that if there ever was a case for collateral estoppel or even unclean hands, this would be one because there has been a judicial determination. Let's assume for a moment that you don't end up persuading the Federal Circuit to give collateral estoppel in effect, collateral estoppel effect to a preliminary finding by a district judge in a case. Do you have an argument that on the 407 that, of course, I think the parties agree that the district court erred in concluding that the Andrix product infringed despite failing to meet one of the limitations. But then there's a further argument on the 407, isn't there, about infringement? Judge, there's arguments for all three patents, not just the 407. I know, but let's look at 407 because you do have a TIVA benefit for the others. Yes. You don't have it on the 407. That's correct. With respect to the 407, Claim 8 has three claim limitations. The judge below expressly determined using modeling data that the Abbott experts created that we did not infringe that first claim limitation. The court then went on to determine that we, in his judgment preliminarily, infringed the second claim limitation, which had to do with the extended release formulation comparison. We disagree with the second finding, but we're not appealing that here today. It's unnecessary to these proceedings. Because the court found that we did not infringe expressly, made a factual determination based on the patent, the evidence that was before him, the modeling data that Abbott created, he made an express factual determination that we did not infringe. He misapprehended the law and erroneously determined that because we violated one element of that Claim 8 that we infringed. He didn't even get to the third claim limitation because he stopped on the second when he found that we infringed. And so, in our view, when we move away from the issue of collateral estoppel and the procedural history of the case... The answer to Judge Prost's question... Simple. The question was, even if you prevailed on the 616 and the 718, isn't it all for naught because you lose on the 407? Your answer is you don't lose on the 407, even assuming you don't get the benefit of equitable estoppel or unenforceable, inequitable conduct of the Rambaxi. You still prevail on the 407, in your view, because there's no likelihood of infringement. That's exactly correct. And again, it seems almost incredible, but it was one of these plain legal errors that are right on the surface. The court did an analysis. The court expressly found, factually, that we did not infringe one of the three claim limitations and then made the mistake of holding that we infringed because he then went on to find, preliminarily, that we infringed the second claim limitation. That factual finding shouldn't be disturbed absent some demonstration of an abuse of discretion for which there's been no showing in this case. So to answer your question very directly, the court's already basically determined it. He just erroneously applied the law to the factual determination. Counselor, who is estopped? The trial judge or us? Who's estopped? Yes. I think it's this court's duty to correct the legal error. This is de novo review of an issue of law. And I think that— Are you— I'm not sure about estoppel. This court's not estopped. You are suggesting that an estoppel gets you the benefit of some determinations by the trial judge involving the other defendants. And I'm just trying to understand what your theory is. So if it's estoppel, who's estopped? The trial judge or us? I think Abbott is. I think Abbott is estopped now to assert against us or anyone else these particular patents, preliminarily seeking preliminary injunctive relief because judicial labor has been done, there's been preliminary determinations, that substantial questions of unenforceability or invalidity have been raised. In our view— What does that mean, that the day that the judge preliminarily ruled adversely to Abbott that its motion for you to be enjoined in the eyes of the law exploded, evaporated? It didn't explode. We needed to come here to this court, which we waited for our opportunity to do so, so that we can— Well, that's what I'm asking. Who's estopped? It sounds like you're really saying we're estopped to not give effect in your appeal to prior determinations either by one of our panels or by Judge Kohler or both. Your Honor, maybe it's a semantical point that I'm making and maybe I'm misunderstanding the court, but from my perspective, I think what we're talking about is a collateral estoppel effect and or an unclean hands bar that should be enforced by this court and that Abbott is estopped based on the determinations below. It now knows that in the context of this extraordinary relief, preliminary injunction, equitable remedy, it now knows that two courts have held that the patents are either preliminarily unenforceable or inequitable, all three patents that are being asserted against us. And so from our perspective, it's a question of estoppel vis-a-vis them, but as far as this court is concerned, we would ask the court to apply the doctrines of collateral estoppel and or unclean hands to prevent further enforcement of patents, which we know now my client, that they should not be enforceable in this particular context, in this case, under Zunig's facts. In this case, it comes to us in a very odd posture and maybe that's perhaps that's why you can't find any precedent one way or another. Doesn't it seem to you that you're asking this court to essentially enforce a preliminary judgment with regard to inequitable conduct on the 407 patent? Is that correct? I don't think so. And the reason why I don't think so is because when that determination was rendered, rather than deal with an appeal in this court, a calculated decision was made to drop the appeal and settle and try to avoid an adverse effect. But isn't the simple answer to Judge Proulx's question from your part, yes, you are asking us to give collateral estoppel effect to a district court preliminary finding of inequitable conduct. You're on much firmer ground when you ask this court to give judicial or collateral estoppel effect to the findings of another panel. Yes. But here, go ahead. But the problem I have now that you've agreed with Judge Ellis is that this court hasn't reviewed. I mean, in fairness to the other side, isn't it just basic that if we were going to give effect, in other words, affirm and enforce a judgment of inequitable conduct by a district court judge, then we ought to have a record of inequitable conduct under which we could evaluate the merits of that issue. And that's not the case you've teed up for us, maybe because there's no record on inequitable conduct or maybe for strategic reasons or otherwise. But Abbott doesn't have a—you're asking this court to enforce a judgment of inequitable conduct, whereas Abbott doesn't even—doesn't have the ability or the forum in which to dispute that. But, Your Honor, it did, though. It chose the forum, and it litigated that claim. The point you're not addressing that Judge Prost asked you to address is we don't have that record, that inequitable conduct record. That record exists below. That's correct. It's not here before this court. That's right. My point being—and I don't want to lose sight of the fact that with respect to the side of this court's Teva ruling, there's a completely separate, very straightforward, simple independent legal ground for a reversal. But I do think it's important— That's the infringement issue. Yes. We've been through that. It's important, though, because the position we're asserting, I think, has a great deal of merit, and that is that Abbott chose not to pursue the appeal. There was an adverse ruling below. It had full control over the ability to come and appeal that in this court. And it chose not to. That decision became part of the public body of law in this case. It has limited applicability, admittedly. There's very few uses of that decision, but one of them is in a direct apples-to-apples comparison in the same case, in front of the same judge, with the same patents. We would submit that it was they who miscalculated and who rolled the dice. What I don't understand is why you all didn't take the simple measure of asking the judge below—why he didn't do it, sua sponte, or she, I don't know which—to consolidate the matters for all purposes in pretrial. It's certainly, for putative infringers, that's always an advantage. You get a bunch of infringers and the poor patentee is there by himself, though he gets to sit next to the jury. Nonetheless, you would then have the benefit. You would have participated in the inequitable conduct proceeding. It would have been part of your record, since it's a consolidated record. And then the concern that Judge Prost and I both have is that you're here asking us to give effect to that, and we don't have a record. Now, that's true in many collateral estoppel circumstances. The court that gives collateral estoppel doesn't have the whole record in front of it. But you can understand that in patent infringement, inequitable conduct cases, that can give some concern, because inequitable conduct is a difficult issue, and often pled, and not often of much merit. Without belaboring the point, I guess my comment to that is Abbott had just as much, if not more, control over the record, and what further use of that decision might be made in these proceedings. And it made the calculated decision to let it go. And we believe in the context of this case, under these circumstances, we should preliminarily have the benefit of that determination. And then just in closing, lastly, and I realize I'm out of time, I don't want to lose sight of the fact, because it's extremely important to our position, that on the face of the judge's ruling, which ironically is in the same order, the order that we're talking about here that gave effect. We realize that. The infringement issue. But even the inequitable conduct is in the same order as the order enjoining us. Yes. But be that as it may. October 5th. We understand that. The fact of the matter is, there's a separate, right on the surface, legal ground that would take care of the 407, and then for that reason, they would be stripped of a likelihood of success in this case. They would be stripped of the presumption of irreparable harm. I think we have it, clearly. We're getting into repetition. I thank you, Your Honor. I apologize for that. Thank you. Thank you, Mr. Isikoff. Mr. Weinberger. Good morning, Your Honor. Mr. Mayor, please, the Court. I'd like to begin with the question of the obviousness ruling and the effect of the Teva decision on the 718. Because I think the assumption that that decision is in any way binding on this panel or should control the challenge to this injunction, I believe, is fundamentally incorrect and quite unfair. Based on the cases you put in your letter that arrived last week. Well, we did, obviously, this has not been briefed in detail, which is one reason I'd like to spend a couple of minutes on it here. But in part, yes, based on the cases that a preliminary ruling, even by an appellate court, is not collateral estoppel, is not law of the case, is not binding on a subsequent panel, even in the same case. And the reason for that... Well, let me probe that a little. Because the case you cite for that proposition in your supplemental authority, I believe, was Glaxo. It's one of the most... And my read of Glaxo, so tell me why I'm wrong, that Glaxo, your citation of Glaxo, it stands for the very unremarkable proposition that when this court does something on a preliminary injunction and then subsequently a panel gets the merits case, that the merits panel is not bound by the court's determination on a preliminary injunction. Correct. That's unremarkable, I think. Yes. I mean, I don't... But I don't understand how you would transfer that principle about the difference between being bound by a PI in the same case on the merits to our context. Let me explain why, Your Honor. The rationale for not applying the preliminary injunction ruling to a later stage is that the preliminary injunction is done on a limited record, often on a hurried basis, and as the case goes on, further evidence is developed and the panel should have the right to... Nobody seemed in much of a hurry here, though. Well, no. That's not the case, Your Honor. In the Teva case, it was very much done that way. What happened in Teva was in June 2005, we went and got a TRO against Teva. They would not agree to allow the TRO to be in effect for more than 10 days. We went and had a preliminary injunction hearing with no discovery, no expert reports, no depositions, no document exchange, all on basically the papers and a hearing. But you write that Teva... I mean, you write Teva was a preliminary injunction, so by definition, there's a limited record and there's no final determination on obviousness. Correct. But isn't there a final determination, unless and until it's reversed on the merits case, that there's a substantial likelihood, there's a substantial question of the validity of that patent? Exactly. And aren't subsequent panels, therefore, bound by that determination that there's a substantial question of invalidity? Let me address it this way. What happened in this case is that Andrix chose to stipulate to a TRO and then to a four-month period during which we had extended discovery, exchange of expert reports. They told us their contentions. They told us what they were claiming was prior art, and then we had a hearing based on that entire record. It's not responsive. Sorry? It's not responsive to the question. Well, they did not disclose the 190 or the 422, which was the subject of the prior art. They did not contend that those were prior art. Had they done that, had they done that, we would have to tell... The question is whether this panel isn't bound by the prior panel, and you're not even addressing that question. Yes. What I'm saying is posing a hypothetical situation that if they had, in the preliminary injunction proceeding that we had with them, identified these pieces of prior art, there would have been a full record on that question, which was very different than the record that we had in the Teva case. Why does that matter? Because if we had been here with a full record, I don't think Your Honors would be saying that the panel would be precluded in that preliminary injunction appeal from looking at the record that had been developed over that four-month period, and be bound by the prior decision that was based on the no discovery, very limited hearing. On the merits. On the merits. But are you saying that hypothetically, if we have two different panels, and one panel goes first, same patent, and it concludes on a PI context, that there's a substantial question of validity, and then you've got another panel the next month that has the same patent before it, in the same, in a PI context, in a preliminary injunction context, that that panel does not have to conclude what the other, follow what the other panel rules? Yes, if there's a different record. If there's additional evidence that was not considered. Do you have a case? Okay. Well, as I said, what case beyond Glaxo, which I think is distinguishable? I think just the general, as I think Mr. Isikoff said, I don't think this precise situation has come up, but the general proposition. The only difference, really, is whether it's final, isn't it? Well, it's not final. For collateral estoppel, because it's the same party, and there's a wealth of authority that says to be final doesn't mean section 1291. It means that there was inadequacy of hearing, opportunity for review, and here it's not likely to be reviewed anymore. For example, let me put it to you this way. Suppose instead of the three judges you see here today, suppose you had the Teva panel back. How do you think you would fare? I think that the point is that the evidence that was— Well, it was rhetorical. I think you would not fare well. I'm happy to address. I could, I think, explain to the Court exactly what evidence could have been developed had Andrix raise this issue. As a matter of fact, just so we're clear on this, Andrix has not even appealed from the Court's rulings of invalidity. They didn't even play on the 718. They have not appealed from that. They've only appealed on the infringement issue. So now they're not only saying we are able to take advantage of this Teva ruling, even though we didn't raise any of these patents as prior arts, and we didn't make any of these arguments, but even though we did not appeal from the Court's issue of validity. Can I just move on before your time runs out? Let's assume, hypothetically, that we were to disagree with you on the obviousness, the validity issues, but agree with you on the inequitable conduct question. Does that mean that we just affirm because there's an injunction issued and that injunction applies across the board? No. Or do we have to treat each of the patents separately? In all candor, no. I think it would have to be remanded, as we said in our brief, because the Court did not reach one of the elements, and we fairly erred in— You're talking about the infringement question? Yes. The infringement question. Correct. But I'm talking about just this versus the other patents. There are three patents at issue here, two on validity and one on inequitable conduct, or there's some overlap between the two. If we were to agree with you on the inequitable conduct, in other words, that this Court was not bound to apply it, then do we just affirm across—we don't just affirm across the board? No. I think not, in all candor. No. It would have to be remanded. It would have to be remanded. For the infringement. However, with respect to the 718, I would urge this, that if—this issue is a very important issue. It has not been briefed. It was not addressed in the brief. Andrix did not even appeal from the validity finding on the 718. So in all fairness, if the Court's going to address that issue now, instead of saying to Andrix, which I think is appropriate, if you have a motion to vacate the injunction based on our prior ruling, go back to the District Court. There's a full record now on it. The District Court can decide that. But if your honors are going to decide that question now, then we ought to be afforded the opportunity to file a full brief on the effect of that ruling. Just one quick question. In your view, on the question of estoppel or whatever we want to call it, does Second Circuit law apply or does our law apply? I think on the question of the effect of one panel's ruling on another, this Court's law would apply. But I don't think there's any difference. Because the Miller-Bruin case that was cited by Andrix is consistent, and Second Circuit law is consistent in the Thomas and Betts case, saying you don't give collateral estoppel effect to preliminary injunction rulings. The only exception, and one of the reasons was the record is different at different stages. Yes, but in those cases, they were talking about a District Court finding only, not about a court of appeals. That case involved a District Court finding. And so did the case that I think Mr. Riscoff cited. But here we have another panel of this Court. Let me ask this. During this period of time, has the injunction been stayed or is it in effect? It's in effect, Your Honor. It's in effect. Has a trial date been set in TEVA? When is that? TEVA actually has been set. TEVA is no longer. The trial date has been set in this case for March, this coming March. You say that TEVA has been settled and Rambaxi has been settled? That's correct, Your Honor. I hope somebody paid attention to the antitrust laws. There is no, I can assure the Court, there's no concern whatsoever. Well generally, when people settle a case where there's a serious question about patent validity, there is a Section 1 issue. Well, I would say this. But that's not for this Court. Not before us. Not before us. That's from my days when I used to do it, not judge it. Well, I do do it, Your Honor, and I can assure the Court all of this is looked at and it's quite appropriate. But again, I would say this issue of the effect of the 718 decision in TEVA on this case has not been briefed at all. And they didn't even appeal from the invalidity findings. So to simply import that when it was done on a hurried basis and here we had a four-month record without any briefing at all, I would ask at the minimum that we be allowed to brief that. I can also represent to the Court that since the TEVA decision was entered, Andrix has now raised these pieces of prior art in the Court below. They filed a new expert report and they raised the 190 and 422 patents. And we've met that with evidence that was not in the TEVA proceeding. And we've shown in that evidence that the way in which the calculations were done, which led to the prior panel's conclusion that that prior art contained the parameters of Claim 2 of the 718 patent, was not correct. Well, that's all not before us. But the point I'm making is that had they raised that I'm sure if we had a trial and one side or the other lost, I'm sure if we had another trial five years from now or five months from now, they'd say we could do it better then too. I hear that all the time. But if they had raised this at the preliminary injunction hearing, that evidence would have been here before this Court. That's why a previous lawyer said something that was absolutely true. There's always a tension between accuracy and finality. The preliminary injunction phase is over as of up here. So we can't re-litigate that here. Why would you say that there are cases in which it is said that collateral estoppel is applied to preliminary determinations by court? What finality means is usually that the litigation of a particular issue has reached a stage that the court doesn't see a good reason for permitting it to be litigated again, namely the preliminary injunction issue. I think the one case that was cited by— What do you say we do about the fact that you have one panel—this is all validity, not infringement—one panel reaching one conclusion and one panel reaching another? Then you say, well, it's a different record, different arguments. Well, that makes all of this look much more like a game than whether we're really dealing with something that affects the economy. I don't agree, Your Honor. I think in one situation, you had a proceeding that took place over 10 days with a very limited situation, and in another, you had four months in which to develop additional facts, additional evidence, additional information that can properly be considered both by the District Court and by the panel of this Court. The fact that a court on that kind of limited, narrow record reaches a conclusion does not forever bind— The Andrix and Rambaxi orders came out on the same day, same order, the 5th of October. Right. I'm referring to the Teva. Now, the Teva came out on the 5th of June. Correct. Now, in the 5th of October order, did the District Judge say, oh, by the way, I found this—I found the same result in Teva, that it was obvious, there wasn't any inequitable conduct in Teva, but he did—did he say, look, I found it obvious in Teva, but here I'm finding it non-obvious? No. In the 718 patent, the court found the 718 was non-obvious. But on the other one, the third one, the 616 or whatever— 616. 616, he had found the patent potentially invalid with respect to Teva on the limited record. Then later, with respect to Andrix, he issued the injunction with respect to— But what I'm asking is, he found the 616 obvious. He found the 616 non-obvious, one in Teva, the other in Andrix. Did he ever say, gee whiz, it looks different now and here are the reasons why? I don't think he did spell that out, but the fact is that there was a much more extensive record the second time around, and we've identified that in our brief in the joint appendix. There was additional material that was available over this four-month period that had been developed. And I would go back to what the Court stated about the Court finding the patent invalid. The Court didn't find the patent invalid. Oh, of course not. It was a preliminary finding of a substantial question. Based on what's presented to him, based on the showing, which is the burden of the defendant, to show invalidity, based on that showing, as limited as it is, he has to make a determination. Now, later, if he has another proceeding and there's additional evidence that he can take into account, there is nothing in the jurisprudence that would prevent him. Did you tell the panel on the Teva appeal about the Andrix finding in the district court? I'm going to make sure I understand that question. The question is that in Andrix, the district court found the 616 valid. In Teva, it found it invalid. When it got to the Court of Appeals, the Federal Circuit, the Federal Circuit was well after both of those. Correct. Did you tell the Federal Circuit Court of Appeals panel that there were inconsistent findings about the 616? No, that wasn't in the record, the appellate record, so it was very difficult for me to go outside that record to refer to it and say, you should now, you know, look at this decision, which was adverse to us, based upon some record evidence that came into the record after the proceeding. I didn't feel that was appropriate, and so I didn't. However, with respect to the 718, we did point out the limited nature of the record, what was shown below, and I can tell the Court now that if Andrix had raised these patents and had appealed from them, the record here would be much fuller, and I don't believe there's anything in the law of jurisprudence that says that if a panel decides that a particular showing of invalidity on a limited record, and then five months later, another party makes an argument, and additional evidence is developed, and a much fuller record, that second panel is precluded from finding that that second defendant has not made an arguable showing on that record. I don't think there's anything that suggests that, and it's fundamentally unfair, because here they didn't even raise it. So they're better off for not having made these arguments, and not even having suggested that the 190 and the 422 were prior art, than they would have been had they raised it and litigated it, which is truly fundamentally unfair. I also want to take the opportunity to make one point and correct a citation in the letter. It is not true that Andrix adopted the invalidity arguments of Teva on the 718 patent. They did not. They did the opposite. They stood up in the preliminary injunction hearing, and they said, we are relying on different prior art than Teva, and the citation in our letter was to JA 238, but it's actually 237. We were off by one page. And we even pointed that out to the court. We said, it's really odd, this prior art everybody is citing is different. No one can agree that anything is controlling. And they came up and said, yes, we admit that. The prior art that we're relying on is different. So we have a situation where they rely on different prior art, we go through a four-month proceeding, none of this is developed, none of this is briefed, they don't appeal invalidity at all, then they come up here and say, we can take advantage of this Teva opinion that was done on a different record, without having briefed the issue, and they now amend their record below, and we have all kinds of evidence below on these two patents to meet their contentions, and they can't be part of the record, and they can't be introduced. And I don't think that that's the law. I don't think that a finding by a panel at a very early stage in a case is now binding throughout that case, and not subject to further review of the record. So if the court thinks it would be helpful, and because that important issue hasn't been briefed, we would ask for the opportunity to file supplemental briefs. Thank you. Thank you. Mr. Isikoff, you used up all your time and a great deal more, but we'll give you up to two minutes for a rebuttal. Thank you, Your Honor. I appreciate that very much. Very briefly, as the circumstances warrant, I would simply point out that we did bring before this court the concept of collateral estoppel. To argue that we didn't appeal the question of validity, that is not correct. We're relying upon collateral estoppel, and with respect to the Teva decision, there has been judicial review of that case. There was a proceeding below. There's been judicial review, preliminary, but we're seeking to use it in the same context as it was actually imposed below. So with respect to the 616 and the 718 patents, there has been judicial review. Collateral estoppel certainly is applicable. But you would agree that Abbott did not have an opportunity in your case to develop a record with respect to the validity, the obviousness questions, correct? That's correct. But that's the concept, that's the underpinning of collateral estoppel. They did have a full and fair opportunity in this preliminary setting to do so in the Teva case. That's what they litigated about, and that's what ultimately was reviewed by this court when it said, we agree with the lower court, it's the 616, but in addition, we think that the 718 preliminarily should be determined invalid because of the prior art. And so there was judicial review. Collateral estoppel squarely applies there. I would also just like to point out two other things. One, so that there's no mistake or misunderstanding, right out of the lower court's decision, the court said as to 407, the issue of non-infringement, and this goes to my last point, which will be there's no need for a remand, the court said, and I'm reading from page 22, importantly, under either the Brundage model, that was their expert, or the Meyer model, Andrex's expert, the predicted Andrex DFL value is not less than the immediate release DFL value reported in Table 4 of the patent specification. The Brundage model calculated a DFL of 155. The Meyer model calculated a DFL of 207. The reported IR DFL value is 1.47 plus or minus 0.26. Neither 155 nor 207 is less than 147. More to the point, neither value is statistically significantly lower than 1.47. Accordingly, both parties' results demonstrate that Andrex's product does not meet the immediate release formulation-related limitation of claim aid. It's an express factual determination. We do not infringe. The court went on, as I had mentioned before, to find that we infringed the second limitation and erroneously determined as a matter of law that we infringe. So our point is this. Collateral estoppel clearly applies as to the issue of obviousness for preliminary purposes. If there's a trial and it later changes, that's one thing. But as of right now, the 78616 — It's been said over and over. I think we clearly have your position. I thank you, Your Honor. I appreciate that very much. Thank you. Both counsel will take the case under advisement.